# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **KIT VIVIEN LORELIED** )<br>　　　　**Plaintiff,** )<br>　　　　　　　　　　　　　　　　　　　　　　)<br>**v.** )<br>　　　　　　　　　　　　　　　　　　　　　　)<br>**LANCE FRYE, M.D.,** in an official capacity as )<br>Commissioner of Health of the Oklahoma State )<br>Department of Health; **KIM BAILEY,** in an )<br>official capacity as Chief Legal Counsel and Operations )<br>of the Oklahoma State Department of Health; and, )<br>**KELLY BAKER,** in an official capacity as Registrar of )<br>Vital Records of the Oklahoma State Department of )<br>Health. )<br>　　　　**Defendants.** ) | CIV-20-819-F |

## COMPLAINT FOR DECLARATORY RELIEF

Plaintiff Kit Vivien Lorelied ("Lorelied"), for their claims against Lance Frye, M.D., Kim Bailey and Kelly Baker (collectively "Defendants"), alleges as follows:

### NATURE OF ACTION

1. This action is brought by an individual who identifies as gender nonbinary and to correct their Oklahoma birth certificate to accurately reflect their identity. Originally assigned the gender of female, that designation does not match their gender identity.

2. Accurate identification on essential documents is critical to an individual's ability to live their life to the fullest. Sectors in all major avenues of life, education, housing, medicine/healthcare, government, education and employment, require documentation reflecting one's true identity. A birth certificate is an essential identification document often use for various purposes, including acquisition of other essential documents.

3. Other individuals born within Oklahoma have access to accurate birth certificates, which match their gender identity; however, nonbinary individuals, alone, are barred from

obtaining accurate birth certificates. This categorical refusal to issue accurate birth certificates precludes nonbinary individuals, such as Lorelied, from enjoying the basic dignity conferred upon others in society and subjects those individuals to unwanted and unnecessary discrimination, harassment, degradation and repercussions.

4. Upon information and belief, the State of Oklahoma categorically refuses to change gender markers for nonbinary individuals to math their gender identity. By way of example, Defendant Kelly Baker, state registrar, refused to comply with an order from the State of Oregon to execute just such a change for Lorelied, because "[n]on-binary is not an option in Oklahoma for birth records."[1] By limiting nonbinary individuals' options, Oklahoma stands inapposite of various states around the country, which recognize and validate individuals' accurate gender identities, without confining those individuals to basic, binary, "options."

5. The practice of disregarding nonbinary individuals' request to change their gender markers violates the United States Constitution, including but not limited to the guarantees of equal protection, due process and freedom of speech.[2] Federal and multi-state jurisprudence show there is no rational government justification to rely upon a binary sex policy in the issuance of amended birth certificates, which would support Oklahoma's refusal to provide nonbinary individuals, such as Lorelied, with a birth certificate matching their gender identity.

**PARTIES**

6. Plaintiff Kit Vivien Lorelied is an nonbinary individual, who was born in Oklahoma and who currently resides in the State of Oregon. Lorelied wished their Oklahoma

---

[1] See correspondence issued from Baker to Lorelied, attached to this Complaint as Exhibit A.
[2] Additionally, Oklahoma's refusal in this instance is also a constitutional violation of the Full Faith and Credit Clause, as the State of Oregon has previously issued an order that Lorelied's birth certificate be amended to reflect the gender of "nonbinary." A copy of this order is attached as Exhibit B.

birth certificate, which currently reflects their sex as "Female," accurately reflect their sex as "Nonbinary," as ordered by the State of Oregon.

7. Defendant Lance Frye, M.D. ("Dr. Frye") is the Commissioner of Health for the Oklahoma State Department of Health ("Department"). Dr. Frye oversees the entire Department, which includes the issuance and amendments of Oklahoma birth certificates. Dr. Frye's duties in this respect are actions under color of state law.

8. Defendant Kim Bailey ("Bailey") is the Chief Legal Counsel & Operations of the Department. Kirkpatrick oversees the vital records division for the Department, which includes enforcement of Oklahoma's binary sex policy in the administration of birth certificates. Kirkpatrick's duties in this respect are actions under color of state law.

9. Defendant Kelly Baker ("Baker") is the Deputy Registrar of Vital Records of the Department. Baker is directly responsible for the issuance of Oklahoma birth certificates and, as such, is responsible for the denial of Lorelied's request for an amended birth certificate matching Lorelied's gender identity. Baker, as registrar, is also the custodian of Oklahoma's vital records and also enforces Oklahoma binary sex policy in the administration of birth certificates. Baker's duties in this respect are actions under color of state law.

## JURISDICTION AND VENUE

10. This court has subject matter jurisdiction as this action constitutes "civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Subject matter jurisdiction further exists, in that this action seeks "[t]o redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States." 28 U.S.C. § 1343(a)(3).

11. This court has personal jurisdiction, because there exists "minimum contacts" between the Defendants and the forum state, including, upon information and belief, that one or more of the Defendants resides within the district and the refusal to grant Lorelied an amended birth certificate, the issue central to this controversy, occurred within the district. *World-Wide Volkswager Corp. v. Woodson*, 444 U.S. 286, 291, 100 S.Ct. 559, 564 (1980); FED. R. CIV. P. 4(k).

12. Venue is proper in the Northern District of Oklahoma because, upon information and belief, one or more of the Defendants resides in this district. 28 U.S.C. § 1391(b)(1). Additionally, "a substantial part of the events or omissions giving rise to the claim," the denial of Lorelied's request for an amended birth certificate, occurred within the Northern District of Oklahoma. 28 U.S.C. § 1391(b)(2).

13. Authority for a declaratory judgment, as well as the preliminary and permanent relief requested herein is authorized by abundant federal jurisprudence. 28 U.S.C. §§ 2201, 2202; FED. R. CIV. P. 57, 65.

## FACTUAL ALLEGATIONS

14. Gender identity is a well-established concept that refers to a person's fundamental sense of self. It is a core, intrinsic, characteristic of identity for everyone. Gender identity is innate, biological, and typically fixed early in life.

15. While a majority of individuals possess a binary gender identity that matches their genetic sex assigned at birth, i.e. cisgender, that is not the case for nonbinary people, who may identify as having two or more genders, no gender, moving between genders or falling within an alternate gender category. Contrary to traditional stereotypes, gender identity and sexual orientation are separate from one another.

16. Biological sex is assigned at birth, based upon external genitalia; however, other characteristics, such as chromosome, hormones, internal reproductive organs and gender identity can also influence, even determine, an individual's sex-related identity.

17. When sex-related identity does not align with that individual's birth-assigned sex, gender identity becomes the key factor determining an individual's sex-related identity. Attempting to change an individual's gender identity to conform to that person's birth-assigned sex risks is not only ineffective, but can result in extreme psychological trauma and harm.

18. The conflict between one's gender identity and birth-assigned sex can result in clinical distress, commonly known as gender dysphoria.[3]  Gender dysphoria is a medical condition that, left undiagnosed or treated, can carry serious consequences.

19. Living consistent with one's gender identity is essential to an individual's overall health and wellbeing, regardless of how that person's identifies. While cisgender individuals do not traditionally experience hardships relative to gender identities, for nonbinary individuals, living consistently with their identity is a key and critical aspect in treatment for gender dysphoria.[4] The process by which nonbinary individuals come to live in a manner consistent with their identity, rather than birth-assigned sex, is known as transition.

20. No individuals' transition is identical; however, some steps can include social transition,[5] hormone treatment[6] and/or medical-interventions.[7]  None of these steps change an

---

[3] Gender dysphoria traditionally has been clinically associated with transgender persons; however, a person does not have to identify as transgender to experience gender dysphoria.
[4] For clarity, not every person that identifies as nonbinary experiences medical gender dysphoria.
[5] Social transition can include changing the name an individual uses in public, changing identification documents to conform to that individual's gender identity, or otherwise adoption societal characteristics in conformity with that individual's identity.
[6] Hormone therapy involves taking hormones commonly associated with a particular gender, which can significantly impact an individuals' physical appearance and/or perceived sex.
[7] Medical interventions can include a variety of surgical procedures that can bring an individual's body and/or appearance into conformity with that person's gender identity.

individual's actual gender, which is determined by their gender identity, but, instead, bring that person's physical appearance or social presentation, or both, into alignment with their gender.

21.  Categorically depriving nonbinary persons from a birth certificate matching their gender identity, simply because Oklahoma does not recognize such as a designation, harms their health and well-being, by impeding nonbinary individuals' ability to live a life consistent with how they see themselves.

22.  In much the same way that a marriage certificate acknowledges the government's recognitions of an individual's relationship, a birth certificate acknowledges the government's recognition of an individual's gender.  Blanket refusal to provide nonbinary individuals with a birth certificate recognizing their identity is akin to governmental refusal to acknowledge the nonbinary community's identity as a whole, depriving an entire group of people from the equal dignity that cisgender, even now transgender,[8] people enjoy simply because those communities were born a certain way.

23.  In addition to providing proof of identification, birth certificates are also regularly used for multiple purposes, including application for jobs, obtaining other identification documents (driver's licenses, passports, social security cards, etc.), obtaining education records and applying for government assistance.

24.  All persons should have access to accurate birth certificates, which provide proof of identity.  However, the gender marker on nonbinary individuals' birth certificates undermines this purpose and can visibly conflict with those individual's actual gender identity.

---

[8] While not formally acknowledged, yet, by statutory or regulatory authority, the Department does have a recognized history of acknowledging birth certificate change requests for transgender individuals, upon presentation of a valid court order, so long as that change falls within the traditional gender binary.

25. Failure to match one's gender identity to the information on their birth certificate subjects nonbinary individuals to unnecessary harm, including invasion of privacy. Misstating their identity on identifying documents potentially discloses, publicly, the fact that an individual does not identify in accordance with traditional gender binary, especially when an individual's physical appearance or social presentation, or both, do not align with their birth-assigned sex.

26. Categorically denying nonbinary individuals a birth certificate that matches their gender identity can disclose private information in contexts where it would otherwise remain undisclosed (i.e. at a social security office), regardless of whether an individual's nonbinary status may otherwise be known to family and/or friends. Nonbinary individuals denied accurate birth certificates are also deprived the ability and control over disclosure of their gender identity, including when, where, how and to whom such disclosures are made.

27. Gender nonbinary people experience discrimination and harassment, including hate crimes, in multiple sectors of public life, including but not limited to the workplace, health care facilities and/or interaction(s) with law enforcement. This heightened targeting makes control over the disclosure of gender identity particularly necessary.

28. Issuing nonbinary persons birth certificates matching their gender identity also provides those individuals an essential document to aid in accurate identity verification. The contents of an inaccurate birth certificate contravene, rather than promote, the purpose of verifying that a nonbinary individual is actually the same person reflected on the birth certificate. As has been already discussed, a nonbinary individual might take steps to make their physical appearance and/or social presentation more accurately reflect that person's gender identity, which may or may not align with the designated sex on that person's birth certificate.

29. Vital Records, with the Department, issues and maintains all birth certificate records for individuals born in the State of Oklahoma. Each of the Defendants enforces or otherwise exercises a practice that refuses to recognize an individual's gender identity, outside the traditional gender binary (hereinafter the "Policy"). Defendants refuse to amend birth certificates to designate "nonbinary," simply because it is not an "option" in Oklahoma.

30. There is no Oklahoma statutory or regulatory authority specifically prohibiting Defendants from changing the gender marker on a nonbinary individual's birth certificate. Upon information and belief, though, Defendants are reliant upon the lack of authority, in this regard, to support their continued denial.

31. Oklahoma Administrative Code § 310:105-3-3 provides for birth certificate amendments, in accordance with the rules of that Section. Further, "[a]ny applicant that desires to make a change, alteration or amendment not provided for in paragraphs (a) through (d) of this section may file a petition with the Administrative Hearing Clerk pursuant to OAC 310:2 and seek a final decision by an Administrative Law Judge granting the relief requested. The applicant shall bear the burden of proof, by clear and convincing evidence that the proposed change, alteration or amendment sought by the Applicant corrects an error or misstatement of fact *as to any non medical information* supplied to the State Registrar by the parent(s), facility or attendant." OKLA. ADMIN. CODE § 301:105-3-3-(e) (emphasis added).[9]

32. The Policy directly contradicts policies adopted by multiple states, which recognize nonbinary gender status and permit such designation on various identifying documents, including birth certificates, driver's licenses, identification cards, etc. Such states

---

[9] Given that Lorelied's requested change clearly relates to "medical information, as well as the fact that Lorelied obtained an Oregon court order, directing the Department to make such a change, any exhaustion of administrative remedies, such as they are made by Defendants, are inapplicable under this regulation.

include Oregon, California, New York, the District of Columbia, Washington, Maine, Minnesota, Arkansas, Colorado, Maryland, Massachusetts, New Hampshire, Hawaii, Pennsylvania, New Mexico, Illinois, Virginia and New Jersey.

33. Additionally, the Tenth Circuit has recently noted, in a challenge to the State Department's binary sex policy relative to the issuance of passports, that "[t]he State Department mirrored how every U.S. jurisdiction was treating gender in May 2017, but these jurisdiction shoehorned everyone into a binary sex classification ill-suited for intersex applications." *Zzyym v. Pompeo*, 958 F.3d 1014, 1025 (10th Cir. 2020). It is clear from the language in the *Zzyym* holding that binary gender classifications no longer provide or promote accuracy or reliability relative to an individual's identification.

34. Additionally, the Supreme Court of the United States very recently held that an individual's sexual orientation and gender identity could not be used as grounds for discrimination or termination in the employment context. *Bostock v. Clayton County, Georgia*, 140 S.Ct. 1731, 1741-42 (2020).[10] Thus, to the extent that gender identity cannot form a basis for employment discrimination, it, likewise, should not form a basis to discriminate in the issuance of amended birth certificates by the Department.

35. The Policy is not supported by any legitimate or valid government interest.

36. To the extent any interest can be proffered, the Policy is neither narrowly-tailored to serve such as purposes nor is it the least restrictive means of achieving such an interest.

---

[10] The *Bostock* Court focuses on "transgender persons," specifically, instead of the greater umbrella of "gender identity;" however, the context make abundantly clear that nonbinary persons, under the *Bostock* rationale, would almost certainly enjoy the same employment protections as transgendered individuals under the same premise outlined in the case.

37. The Policy is motivated by an objective of animus towards gender nonbinary individuals, aimed at preventing individuals identifying gender in nontraditional ways from obtaining identifying documents matching their actual gender identities.

38. Lorelied is an adult person, born in Oklahoma, currently residing in Oregon.

39. Lorelied identifies as gender nonbinary; however, Lorelied was assigned the sex of female at birth. Lorelied has known for a long time, though, that this birth-assigned sex designation did not, and does not, match Lorelied's actual gender identity.

40. To obtain essential documentation matching their gender identity, Lorelied obtained an Oregon court order, directing a change to Lorelied's "sex" to "Nonbinary."[11] The order further states that "[t]he court finds that [Lorelied] has undergone surgical, hormonal, or other appropriate treatment for the purpose of affirming gender identity."[12]

41. As a result of the Policy, though, Lorelied's birth certificate continues to fail to reflect their gender identity, which is nonbinary. Defendants' refusal to issue a birth certificate reflecting Lorelied's gender is a triggering reminder that the State of Oklahoma does not recognize Lorelied's actual identity. This refusal is an additional barrier in Lorelied's ability to function successfully, including any time when they must present their Oklahoma birth certificate to others. Further, presenting identity documents that do not actually reflect Lorelied's true gender identity subject Lorelied not only to undue humiliation, but also puts Lorelied at unnecessary risk of danger in today's stigmatized and, oftentimes, prejudiced society.

42. On December 27, 2019, Lorelied was told by Baker that they could not amend their birth certificate, in compliance with the Oregon court order, because "'[n]on-binary' is not

---

[11] Exhibit B.
[12] *Id.*

an option in Oklahoma for birth records."[13]  Lorelied was then directed to go back to the Oregon courts, if they wanted to amend their birth certificate to "Male."[14]

## CAUSES OF ACTION PURSUANT TO 42 U.S.C. § 1983

### I.     Equal Protection

Lorelied re-alleges and incorporates the foregoing paragraphs as fully set forth here.

43.     The Fourteenth Amendment to the United States Constitution provides that no state shall "deny to any person within its jurisdiction the equal protection of the law."

44.     The Policy specifically and intentionally discriminates against individuals that identify or otherwise define gender contrary to the traditional gender binary model.  The "sex" that the government lists on an individual's original birth certificate is simply the government's classification of that person's sex; however, for nonbinary individuals, this classification contradicts their gender identities, naturally resulting in harm.  Discrimination based on sex-related considerations also includes but is not limited to, discrimination based on gender-nonconformity, gender identity and gender nonbinary status.[15]

45.     The Policy discriminates against nonbinary individuals, on its face, by depriving nonbinary individuals, and them alone, a birth certificate that reflects their actual gender identity.  Cisgender, and now transgender, individuals are not so deprived.

46.     Discrimination because of an individuals' gender identity is both discrimination on the basis of sex, which requires intermediate scrutiny, and discrimination based on nonbinary gender status, which requires courts to apply strict scrutiny.

47.     Strict scrutiny in this matter is required, because discrimination against nonbinary individuals involves a suspect classification, given the following: (a) Gender nonconforming

---

[13] Exhibit A.
[14] *Id.*
[15] *Bostock v. Clayton County, Georgia*, 140 S.Ct. 1731, 1741-42 (2020).

individuals have suffered a long history of discrimination; (b) Gender nonbinary individuals are a discrete and insular minority in society; (c) Gender identity bears no rational relationship to an individual's ability to contribute to society; and, (d) Gender identity is an immutable trait, typically fixed at an early age.

48. The Policy deprives Oklahoma native nonbinary individuals, like Lorelied, their right to equal dignity under the law in violation of the Equal Protection Clause.

## II.   Due Process

Lorelied re-alleges and incorporates the foregoing paragraphs as fully set forth here.

49. The Fifth and Fourteenth Amendments of the United States Constitution guarantee that no person be deprived "of life, liberty or property, without due process of law." One of these guarantees is a right to privacy, especially in regards to protection from disclosure of information of a highly personal and intimate nature. Government infringement on these protections requires application of strict scrutiny standards.

50. A person's gender identity, especially a non-traditional identity, is highly personal and intimate information. A reasonable person would find unwanted disclosure of someone's nonbinary status to be deeply offensive and intrusive.

51. The Policy violates nonbinary individuals' right to privacy, by requiring unwanted disclosures of their gender identity, thereby depriving them of the means and manner of self-disclosure. By way of example, a nonbinary individual, in applying for a job or seeking medical attention, may be required to disclose their birth certificate, which would contain a birth-assigned sex designation that does not align with that individual's actual gender identity.

52. There are no appropriate safeguards to prevent these unwanted disclosures.

53. There is no, legitimate, government interest promoted by the Policy, which causes the unwanted disclosure of gender identity every time a third party sees a nonbinary individual's birth certificate.

54. There is no statute, regulation or even public policy in requiring such an unwanted disclosure of gender identity.

55. The Policy also threatens the right to define and express individuality, by causing a nonbinary individual to be labeled, by the government, in a manner inconsistent and contrary to that person's actual identity.  People have the right to be treated the way they identify and not as the government would so label them.   The United States Constitution protects equality, individuality, dignity and personal identity.  The government ought to be prohibited from interfering with these protections.

### III.     First Amendment

Lorelied re-alleges and incorporates the foregoing paragraphs as fully set forth here.

56. The First Amended to the United States Constitution guarantees that the government "shall make no law . . . abridging the freedom of speech.  This amendment also protects the individual's right to refrain from speech.

57. The Policy violates the First Amendment by requiring a nonbinary individual to unnecessarily either disclose their gender identity or to otherwise identify with their birth-assigned sex, which conflicts with their actual identity.  In this way, their right to refrain from speech is violated, as well as their right to express their true identity.

### IV.     Full Faith and Credit

Lorelied re-alleges and incorporates the foregoing paragraphs as fully set forth here.

58. Article IV, Section 1 of the United States Constitution provides that "[f]ull Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State."

59. The Policy violates the Full Faith and Credit Clause of the United States Constitution by preventing Oklahoma from recognizing or otherwise enforcing the Oregon court order, authorizing Lorelied's gender marker to be changed to "Nonbinary."

WHEREFORE, Plaintiff Kit Vivien Lorelied respectfully requests that this Court: (1) Issue a declaratory judgment, pursuant to 28 U.S.C. § 2201-02, declaring that the Policy of not issuing "Nonbinary" gender marker designations on birth certificates unconstitutional, both on its face and for the reasons stated above; (2) Permanently enjoin the Department from further blanket enforcement of the Policy; (3) Award Plaintiff costs, expenses and attorneys' fees, pursuant to 42 U.S.C. § 1988(b) and any other applicable laws, as well as any other relief that this Court deems just and proper.

Respectfully submitted,

**MCDANIEL ACORD & LYTLE, PLLC**

/s/ *Christopher U. Brecht*
Christopher U. Brecht, OBA No. 22500
Stacy L. Acord, OBA No. 18633
9343 E. 95th Ct.
Tulsa, OK 74133
(918) 382-9200
(918) 382-9282 *fascimile*
cbrecht@ok-counsel.com
sacord@ok-counsel.com
*Attorneys for Petitioner*